# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:16-cr-160 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| BORN MURRAY (1)<br>ELSTARHEEM MURRAY (2), | : | |
| Defendants. | : | |

## ENTRY AND ORDER DENYING THE MOTION TO SUPPRESS (DOCS. 21) FILED BY DEFENDANTS BORN MURRAY AND ELSTARHEEM MURRAY

Under a two count Indictment, Defendants Elstarheem Murray ("Elstarheem") and Born Murray ("Born") were charged with conspiracy to possess stolen mail and commit bank fraud as well as possession of stolen mail. (Doc. 12). Under Count 1, both Defendants are alleged to have engaged in a conspiracy to remove business checks from the United States mail, alter the business names on the checks, and attempt to present the checks to banking institutions in Dayton, Ohio, in order to fraudulently obtain cash in violation of 18 U.S.C. §§ 37 and 1349. Under Count 2, both Defendants are alleged to have knowingly possessed stolen United States mail taken or abstracted from letter boxes in violation of 18 U.S.C. §§ 1708 and 2. This matter is set for trial on June 26, 2017.

Now pending before the Court is Defendants' Motion to Suppress. (Docs. 21). Defendants argue that the allegedly stolen checks were discovered during an unconstitutional, pretextual traffic stop. In opposition, the Government argues that the law enforcement officers who conducted the traffic stop did not violate Defendants' rights under the Fourth Amendment.

On March 21, 2017, the Court held a hearing on the Motion to Suppress. (Doc. 26.) After the hearing, Defendants submitted post-hearing memoranda (Docs. 29-30), in response to which the Government filed a memorandum in opposition (Doc. 31). Defendants each filed a reply (Docs. 33-34) to the Government's memorandum. The Court has reviewed the parties' briefing and the Motion is ripe for review. For the reasons stated below, the Court **DENIES** the Motion to Suppress.[1]

I. **BACKGROUND**

On November 29, 2016, law enforcement officers working with the Miami Valley Bulk Smuggling Task Force ("Task Force") observed Elstarheem and Born get into a car and leave a motel on Miller Lane in Dayton, Ohio. Task Force agents followed the car and observed Elstarheem, who was driving, execute an illegal lane change. Based on this violation, the Task Force agents called Ohio State Patrol Trooper Joseph Weeks ("Weeks") via radio and requested that he initiate a traffic stop. Both the Task Force agents and Weeks admit that the purpose of the traffic stop was to conduct an investigation into possible criminal activity.

After stopping Defendants' car on Interstate 75, Weeks conducted NCIC and LEADS records checks on both Defendants. The records checks revealed that Elstarheem had a conviction involving narcotics and was not licensed to drive, and that Born had a conviction for check fraud. Defendants told Weeks that they were seeking medical attention for Born. Weeks did not issue a traffic citation and allowed Defendants to continue traveling after Born, who was licensed, agreed to drive.

Shortly after this traffic stop, Task Force agents observed Defendants again at the same motel on Miller Lane. Defendants placed luggage into two different cars and then left the motel

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Anthony Satariano in drafting this opinion.

together in one of the cars. The other car left the motel traveling in the opposite direction. Task Force agents followed Defendants' car and observed it make a right turn on red without coming to a complete stop. The agents radioed Weeks to conduct another traffic stop, which he did. Again, both the Task Force agents and Weeks admit that the purpose of the traffic stop was to conduct a criminal investigation.

When Weeks reached the car, he asked Born, who was the driver, to come with him to his police cruiser. Weeks told Elstarheem to remain seated and to keep his hands on the dashboard. While Weeks walked with Born to the police cruiser, Elstarheem fled from the car. Weeks gave chase, told Elstarheem to stop, and warned him that he was armed with a Taser. Elstarheem heeded the command to stop and Weeks secured each of the Defendants in a police cruiser— after additional officers arrived to support him. Weeks then deployed Ryo, a canine trained in the detection of narcotics, to conduct an open-air sniff test around Defendants' car. Ryo alerted to the trunk of the vehicle indicating that he detected the smell of narcotics in that area. Based on Ryo's alert, Task Force Officers conducted a search of the trunk compartment and found an envelope containing 150 business checks. The Officers seized the checks, which are the primary evidence at issue in this Motion.

## II.      LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the rights of individuals against unreasonable searches and seizures conducted by state actors. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir. 2014). A search occurs when the Government acquires information by either "physically intruding on persons, houses, papers, or effects" or otherwise invading an area in which the individual has a reasonable expectation of privacy. *Id*. (citing *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013)). "A seizure occurs when the Government

interferes in some meaningful way with the individual's possession of property." *Id*. (citing *United States v. Jones*, 565 U.S. 400 n.5 (2012)). The party seeking suppression of evidence obtained by a search has the burden of proving that the search was unlawful. *United States v. Blakeney*, 942 F.2d 1001, 1014 (6th Cir. 1991).

A traffic stop involves a seizure in terms of the Fourth Amendment. *Bendlin v. California*, 551 U.S. 249, 255 (2007). The Sixth Circuit applies a probable cause standard to traffic stops executed to investigate a civil infraction. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). The Sixth Circuit defines probable cause as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" and it has determined it exists when "there is a fair probability, given the totality of the circumstances, that" an offense has occurred or evidence will be found. *United States v. Howard*, 621 F.3d 43, 453 (6th Cir. 2010). The reasonableness of a traffic stop does not depend on the motivations of an officer and so long as an officer has probable cause to believe a traffic violation has occurred a resulting stop does not violate the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 812-13 (1996); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

The "collective knowledge" doctrine allows an officer to conduct a traffic stop pursuant to information obtained by a fellow officer. *United States v. Lyons*, 687 F.3d at 766-67. The Sixth Circuit has stated that the "collective knowledge" doctrine applies when an officer effectuates a stop at the direction of another officer who possesses the requisite knowledge to render the stop Constitutionally allowable. *Id*. at 767. The court utilizes a three factor test to determine if a stop is allowable under the "collective knowledge" doctrine and those factors are: (1) the officer taking action must act in objective reliance based on the information received, (2) the officer providing the information must have facts that support the probable cause required,

4

and (3) the stop can be no more intrusive than would have been allowed had the requesting officer been the one to conduct it. *Id.*

The Fourth Amendment allows officers to investigate crimes not related to the reason for a traffic stop so long as the investigation does not exceed the time reasonably required to issue a traffic citation. *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-15 (2015). The Supreme Court has been clear in stating "[a]n officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop." *Id*. at 1615.

When an officer conducts an open air sniff with a trained drug dog during a lawful traffic stop, the sniff does not constitute a "search" in terms of the Fourth Amendment and does not represent an unreasonable delay when the dog is already present at the scene where the stop is occurring. *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998). If a properly trained drug dog alerts to the presence of drugs, probable cause exists for a lawful search as long as the facts surrounding the alert would make a reasonably prudent person think a search would uncover contraband. *United States v. Holleman*, 743 F.3d 1152, 1156 (8th Cir. 2014); *Florida v. Harris*, 133 S. Ct. 1050, 1058 (2013). If officers have probable cause to search a lawfully stopped vehicle, they may search any part of the vehicle or its contents that may contain the object of the search. *Wyo. V. Houghton*, 526 U.S. 295, 301 (1999).

When the government seeks to seize an item during a search there must be a nexus between the item being seized and a suspected criminal activity. *United States v. Fisk*, 255 F.Supp 2d 694, 705 (2003). When the item being seized represents fruits of a crime, instrumentalities or contraband the nexus is automatically provided. *Id.*

## III. ANALYSIS

Defendants make three primary arguments: (1) the process leading to the traffic stop was unlawful or unconstitutional, (2) the detention of Born was impermissible, and (3) there was no probable cause to conduct a search of the vehicle. Defendants assert that these reasons, jointly or separately, render any evidence recovered by the Task Force Officers "Fruit of the Poisonous Tree" and thus require the evidence be suppressed. The Court addresses each of these arguments in turn below.

### A. The Process Leading Up to the Traffic Stop

Defendants assert that the Task Force Officers' primary objective in stopping Defendants' vehicle was to conduct a narcotics investigation, but the Officers did not have probable cause to search the vehicle for that purpose. They refer to this form of stop as "pretextual," in that the reason for stopping the vehicle—to address a traffic violation—is not the actual purpose of the stop. In support, Defendants cite Weeks' testimony that he pulled over Defendants' vehicle, not with the sole intent of issuing a traffic citation, but also with the intent to further a possible narcotics investigation.

Be that as it may, that the Task Force Officers or Weeks had an ulterior motive in stopping Defendants' vehicle is not relevant. The constitutionality of a traffic stop is premised on whether the acting officer had probable cause to believe a traffic violation occurred, not his subjective mental state. *Whren*, 517 U.S. at 812-13. When assessing whether he had probable cause to stop Defendants' vehicle, Weeks was entitled to rely on the Task Force Officers' knowledge under the collective knowledge doctrine. *Lyons*, 687 F.3d at 766-67. Weeks' stop conformed with that doctrine because he (1) acted in objective reliance on the facts before him when he initiated the stop based on a traffic violation reported to him by his colleagues, (2) the

Task Force Officers observing Defendants' vehicle witnessed the traffic violation firsthand, and (3) the stop was no more intrusive than would have been allowed had one of the witnessing officers conducted it, as Weeks initiated a standard procedure stop. *Id.*

When Weeks stopped Defendants' vehicle, he did so in objective reliance on Task Force Officers' having witnessed the vehicle change lanes without signaling (the first stop) and turning right at a red light without stopping (the second stop). Nothing in the record would cause a reasonable officer in Weeks' shoes to doubt that he had probable cause to believe that these traffic violations (both civil infractions under the Ohio Code) had occurred. The process leading to the execution of the traffic stop therefore conformed with the requirements of the Fourth Amendment.

### B. The Detention of Born

Defendants also assert that Born was impermissibly detained when Weeks removed him from Defendants' vehicle at the beginning of the traffic stop. Defendants argue that Weeks had not yet asked any questions related to the traffic violation and, therefore, Weeks did not have any reason to remove Born from the vehicle—thereby detaining him.

The law is clear, however, that an officer may conduct an investigation into an unrelated matter during the execution of a lawful traffic stop, so long as the resultant detention does not last longer than what would be reasonably allowable in order to complete the mission of issuing a citation. *Rodriguez*, 135 S. Ct. at 1614-15. Weeks testified that he removed Born from the vehicle to separate the two Defendants while he ascertained what was occurring. This is a form of investigation. The record shows a very brief passage of time between when Weeks ordered Born out of the car and when Elstarheem exited the vehicle. After this brief passage of time and once the Defendants were secured, Weeks deployed his drug dog Ryo within one to two minutes.

7

Probable cause to search a vehicle need not exist before conducting an open air sniff because an open air sniff is not a search under the Fourth Amendment. *Reed*, 141 F.3d at 650. The evidence does not suggest that an "unreasonable" amount of time passed between initiation of the traffic stop and Ryo's deployment. Certainly, it would not have been possible for Weeks to process and issue a traffic citation in the amount of time between Born's removal and Elstarheem's exit. After Elstarheem left the vehicle, a delay in the normal citation issuing procedure may have occurred, but any such delay is attributable to Elstarheem's actions and not those of the officers.

For these reasons, neither Born nor Elstarheem were detained for a period of time that was unreasonable nor was the open air sniff conducted in a way that impermissibly extended the length of the traffic stop.

### C. Probable Cause to Search the Vehicle

Defendants argue that the evidence seized should be suppressed because the Task Force Officers and Weeks did not have probable cause to search the vehicle. The record is uncontroverted that Ryo is a trained drug dog specifically taught to alert to the scent of narcotics. It is well settled that when a train drug dog alerts to a vehicle probable cause to search the vehicle then exists. *Holleman*, 743 F.3d at 1156. This probable cause is created so long as the facts and circumstances present would allow a prudent officer to believe contraband may be found. *Harris*, 133 S. Ct. at 1058. Once probable cause has been established, any container large enough to conceal the object of the search may be searched. *Houghton*, 526 U.S. at 301.

Weeks testified that Ryo is trained to detect the odor of narcotics and alerts officers to its presence by exhibiting certain behavior, including increased respiration, perked ears, and increased speed. When Ryo alerted to the trunk of Defendants' car, it established probable cause

to search any container large enough to conceal narcotics, which would include the envelope that contained the checks at issue. Defendants' counsel questioned Ryo's accuracy at the hearing, but there is no evidence that Weeks had reason to doubt Ryo's reliability. As such, the search of the trunk and examination of the envelope were both permissible.

The officers also were permitted to seize any object that was identifiable as fruits of a crime or contraband as long as a nexus could be identified between the item and the suspected crime. *Fisk*, 255 F.Supp 2d at 705. The officers uncovered a large amount of business checks totaling a value of over $1 million, none of which were made out to either of the Defendants. Combined with their knowledge that Born had a prior conviction for check fraud and the suspicion created when Elstarheem fled, it was reasonable for the officers to believe the checks may represent fruits of a criminal activity. A reasonable officer would possess more than a suspicion the checks represented the fruits of a crime.

In sum, the search of Defendants' vehicle and seizure of the checks at issue did not violate Defendants' Fourth Amendment rights.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Suppress (Doc. 21).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, June 8, 2017.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE